1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Andrew M. Hutchison (SBN 289315)
COZEN O'CONNOR
101 Montgomery Street, Suite 1400
San Francisco, CA 94104
Telephone:    415.644.0914
Fax:    415.644.0978
Email: ahutchison@cozen.com


Attorney for Defendant,
DOUGLAS MacMARTIN


IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA


DANE WIGINGTON dba
GEOENGINEERING WATCH,

          Plaintiff,

vs.

DOUGLAS MacMARTIN fka DOUGLAS
MacMYNOWSKI; and DOES 1-10,
inclusive.

          Defendant.

Case No.: 2:21-cv-02355-KJM-DMC

Hon. Kimberly J. Mueller

**DEFENDANT DOUGLAS MACMARTIN's MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF HIS MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(2) AND 12(b)(6) AND MOTION TO STRIKE PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 425.16**

Date: March 4, 2022
Time: 10:00 a.m.
Courtroom: 3, 15th Floor

Complaint filed: November 5, 2021
Removal Date: December 17, 2021

[Filed concurrently with Notice of Motion and Motion; and Declaration of Douglas MacMartin]

# TABLE OF CONTENTS

Page

I. INTRODUCTION ........................................................................................................... 1

II. STATEMENT OF FACTS ............................................................................................. 2

III. ARGUMENT .................................................................................................................. 4

    A. Plaintiff's Claims Should Be Dismissed for Lack of Personal Jurisdiction. ............... 4

        1. Legal Standard ............................................................................................... 4

        2. This Court Lacks General Personal Jurisdiction Over Defendant ................... 5

        3. This Court Lacks Specific Personal Jurisdiction Over Defendant................... 7

    B. Plaintiff Has Failed to Plead Actionable Defamation ........................................... 9

        1. Legal Standard ............................................................................................... 9

        2. The Two Statements at Issue Are Not Capable of Defamatory Meaning......... 9

        3. The Two Challenged Statements Constitute Protected Opinion..................... 11

            a. Standard for Determining Opinion ....................................................... 11

            b. A Review of the Two Statements' Context Reveals They Are
               Statements of Opinion............................................................................ 12

        4. Plaintiff Is a Limited Public Figure And Has Not Alleged Actual Malice...... 13

    C. Plaintiff Has Failed to Plead Interference With Prospective Economic Relations...... 15

    D. The Court Should Also Strike The Complaint Under California's
      Anti-SLAPP Statute ........................................................................................... 17

        1. Prong One: MacMartin Engaged in Protected Conduct ................................ 18

        2. Prong Two:  No Likelihood of Success on the Merits.................................... 18

IV. CONCLUSION................................................................................................................ 19

i

**DEFENDANT DOUGLAS MACMARTIN's MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF HIS MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND MOTION TO STRIKE**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ampex Corp. v. Cargle,*
    128 Cal. App. 4th 1569 (2005) ...................................................................................14, 15

*Appel v. Wolf,*
    839 F. App'x 78 (9th Cir. 2020) ........................................................................................17

*Arthur v. Offit,*
    No. 01:09-cv-1398, 2010 WL 883745 (E.D. Va. Mar. 10, 2010)..........................................10

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009).............................................................................................................9

*Basile v. LA Film School, LLC,*
    827 F. App'x 649 (9th Cir. 2020) ........................................................................................9

*Batzel v. Smith,*
    333 F.3d 1018 (9th Cir. 2003) ...........................................................................................18

*Block v. eBay, Inc.,*
    747 F.3d 1135 (9th Cir. 2014) ...........................................................................................16

*Brown v. Allstate Ins. Co.,*
    17 F. Supp. 2d 1134 (S.D. Cal. 1998)................................................................................16

*Brown v. Kelly Broadcasting Co.,*
    48 Cal.3d 711 (1989) ..........................................................................................................11

*Bubble Genius LLC v. Smith,*
    No. CV 15-0066 PA, 2015 WL 4399483 (C.D. Cal. July 17, 2015)........................................7

*Burdick v. Super. Ct.,*
    233 Cal. App. 4th 8 (2015) .............................................................................................7, 8

*Calder v. Jones,*
    465 U.S. 783 (1984)..............................................................................................................7

*Campanelli v. Regents of the Univ. of Cal.,*
    44 Cal. App. 4th 572 (1996) ...............................................................................................12

*CRST Van Expedited, Inc. v. Werner Enters., Inc.,*
    479 F.3d 1099 (9th Cir. 2007) ...........................................................................................16

*Elite Semiconductor, Inc. v. Anchor Semiconductor, Inc.,*
    No. 5:20-cv-06846-EJD, 2021 WL 3037701 (N.D. Cal. July 19, 2021)..........................5, 6, 7

**DEFENDANT DOUGLAS MACMARTIN's MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF HIS MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND MOTION TO STRIKE**

*Ferlauto v. Hamsher*,
    74 Cal. App. 4th 1394 (1999) ................................................................12

*Ford Motor Co. v. Montana Eighth Judicial Dist. Ct.*,
    141 S. Ct. 1017 (2021) .........................................................................5

*Gertz v. Robert Welch*,
    418 U.S. 323 (1974) ............................................................................15

*Harte-Hanks Commc'ns Inc. v. Connaughton*,
    491 U.S 657 (1999) ............................................................................15

*Herring Networks, Inc. v. Maddow*,
    8 F.4th 1148 (9th Cir. 2021) ................................................11, 13, 19

*Info. Control Corp. v. Genesis One Computer Corp.*,
    611 F.2d 781 (9th Cir. 1980) ...............................................10, 11, 12

*Int'l Shoe Co. v. Washington*,
    326 U.S. 310 (1945) ............................................................................5

*John Doe 2 v. Super. Ct.*,
    1 Cal. App. 5th 1300 (2016) ...........................................9, 10, 11, 13

*Makaeff v. Trump Univ., LLC*,
    715 F.3d 254 (9th Cir. 2013) ...............................................................14

*Metabolife Int'l., Inc. v. Wornick*,
    72 F. Supp. 2d 1160 (1999) ................................................................12

*Metabolife Int'l, Inc. v. Wornick*,
    264 F.3d 832 (9th Cir. 2001) ...............................................................12

*In re NCAA Student–Athlete Name & Likeness Licensing Litig.*,
    724 F.3d 1268 (9th Cir. 2013) .............................................................17

*Nestlé United States, Inc. v. Crest Foods, Inc.*,
    No. LA CV16-07519 JAK (AFMx), 2019 WL 2619635 (C.D. Cal. Mar. 8, 2019) ...............16

*Numeric Analytics, LLC v. McCabe*,
    161 F. Supp. 3d 348 (E.D. Pa. 2016) ..................................................6

*Nygard, Inc. v. Uusi-Kerttula*,
    159 Cal.App.4th 1027 (2008) ..............................................................18

*Pacific Shores Hosp. v. EMCOR Group Inc.*,
    No. CV 10-07480 DDP (PLAx), 2011 WL 13217541 (E.D. Cal. Feb. 4, 2011) .....................9

*Palm Springs Villas II Homeowners Ass'n, Inc. v. Parth*,
    248 Cal. App. 4th 268 (2016) .............................................................15

**DEFENDANT DOUGLAS MACMARTIN's MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF HIS MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND MOTION TO STRIKE**

*Partington v. Bugliosi,*
    56 F.3d 1147 (9th Cir. 1995) .................................................................................. 11

*Pavlovich v. Super. Ct.,*
    29 Cal.4th 262 (2002) ..................................................................................... 7, 8

*Pedus Bldg. Servs., Inc. v. Allen,*
    96 Cal. App. 4th 152 (2002) ................................................................................ 6

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress,*
    890 F.3d 828 (9th Cir. 2018) ............................................................................. 19

*Reader's Digest Assn, v. Super. Ct.,*
    37 Cal.3d 244 (1984) ........................................................................................ 14

*Resolute Forest Prods., Inc. v. Greenpeace Int'l,*
    302 F. Supp. 3d 1005 (N.D. Cal. 2017) ...................................................... *passim*

*Schwarzenegger v. Fred Martin Motor Co.,*
    374 F.3d 797 (9th Cir. 2003) ............................................................................ 5, 7

*Senne v. Kansas City Royals Baseball Corp.,*
    105 F. Supp. 3d 981 (N.D. Cal. 2015) ................................................................. 5

*Siazon v. Hertz Corp.,*
    847 F. App'x 448 (9th Cir. 2021) ...................................................................... 11

*Silicon Knights, Inc. v. Crystal Dynamics, Inc.,*
    983 F. Supp. 1303 (N.D. Cal. 1997) .................................................................. 17

*Soil Retention Prods. v. Brentwood Indus.,*
    521 F. Supp. 3d 929 (S.D. Cal. 2021) ................................................................ 16

*Span Const. & Eng'g, Inc. v. Stephens,*
    No. CIV-F-06-0286 AWI DLB, 2006 WL 1883391 (E.D. Cal. July 7, 2006) ......... 7

*Stage Nine Design, LLC v. Rock-It Cargo USA, LLC,*
    No. 2:21-cv-00722-WBS-AC, 2021 WL 3565310 (E.D. Cal. Aug. 12, 2021) ......... 5

*Sybersound Records, Inc. v. UAV Corp.,*
    517 F.3d 1137 (9th Cir. 2008) ........................................................................... 17

*Tull v. Higgins,*
    No. 21-cv-01566-DMR, 2021 WL 6116971 ................................................ 14, 15

*Underwager v. Salter,*
    22 F.3d 730 (7th Cir. 1994) .......................................................................... 11, 12

*ViaView, Inc. v. Retzlaff,*
    1 Cal. App. 5th 198 (2016) ........................................................... 8, 10, 11, 13

**DEFENDANT DOUGLAS MACMARTIN's MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF HIS MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND MOTION TO STRIKE**

*W. Broad. Co. v. Times-Mirror Co.*,
   14 Cal. App. 2d 120 (1936) ....................................................................................10

*Walden v. Fiore*,
   571 U.S. 277 (2014)..............................................................................................7, 8

*Weiss v. Mayda*,
   No. B071255, 1993 WL 723475 (Cal. Ct. App. Dec. 29, 1993) .............................10

*White v. Lemendola*,
   No. S-10-3303, 2011 WL 2414420 (E.D. Cal. Jun. 8, 2011) ....................................6

*Williams v. Kula*,
   No. 20-CV-1120 TWR (AHG), 2020 WL 7770915 (S.D. Cal. Dec. 29, 2020) .......................8

*Wynn v. Chanos*, ,
   75 F. Supp. 3d 1228 (N.D. Cal. 2014) .....................................................................9

**Statutes**

Cal. Civ. Proc. Code § 410.10 ..........................................................................................5

Cal. Civ. Proc. Code § 425.16(c) ...................................................................................19

Cal. Code Civ. Proc. § 425.16(e) ...................................................................................18

Cal. Civ. Code § 45 ...........................................................................................................9

**Other Authorities**

Fed. R. Civ. P. 12(b)(2)..............................................................................................4, 5

Fed. R. Civ. P. 12(b)(6).................................................................................................19

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**DEFENDANT DOUGLAS MACMARTIN's MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF HIS MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND MOTION TO STRIKE**

1    **I.    INTRODUCTION**

2        Plaintiff, Dane Wigington, believes that governments, engineers, airlines and presumably

3    others around the world have been engaged in a long term, vast conspiracy that has involved

4    "geoengineering" the planet Earth by having aircraft intentionally spread trails of chemicals in order

5    to reflect sunlight away from the planet.  Defendant, Dr. Douglas MacMartin is a climate scientist at

6    Cornell University.  While there has been academic discussion for years about the *possibility* of using

7    "solar radiation management" or "solar radiation modification" ("SRM") to alter Earth's climate, Mr.

8    Wigington has made numerous claims that governments and others are *currently* and *secretly* using

9    SRM and have been doing so for years.  MacMartin, on the other hand, believes that there is no global

10   SRM conspiracy.

11       In early 2021, Wigington released a nearly-two-hour documentary on the subject called *The*

12   *Dimming* in which he expounded on his SRM theory.  In March of 2021, Climate Feedback (a nonparty

13   to this lawsuit) published on its website a "Claim Review" that evaluated the SRM claims contained

14   in Wigington's documentary.  (*See* Declaration of Douglas MacMartin ("MacMartin Decl."), ¶ 12, Ex.

15   1.)  Climate Feedback is an organization dedicated to "verifying the credibility of influential claims

16   and media coverage regarding climate change."  At the end of the Claim Review there is a section in

17   which MacMartin provided "feedback."  He opined that the claims in the documentary are "pure

18   fantasy."  This "feedback" is the sole focus of this meritless defamation lawsuit, through which

19   Wigington seeks to silence MacMartin's opposing viewpoint.

20       A federal court in California recently declined to wade into the merits of a different scientific

21   controversy in response to a defamation claim against the nonprofit Greenpeace, International.  The

22   court dismissed the defamation claims, holding that "[t]he academy, and not the courthouse, is the

23   appropriate place to resolve scientific disagreements of this kind."  *Resolute Forest Prods., Inc. v.*

24   *Greenpeace Int'l*, 302 F. Supp. 3d 1005, 1021 (N.D. Cal. 2017).  The *Greenpeace* court continued by

25   quoting from a Judge Easterbrook opinion: "scientific controversies must be settled by the methods of

26   science rather than by the methods of litigation."  *Id.* (quoting *Underwager v. Salter*, 22 F.3d 730 (7th

27   Cir. 1994)).  The *Greenpeace* court concluded that, "[f]or that reason, courts have a justifiable

28   reticence about venturing into the thicket of scientific debate, especially in the defamation context."

**DEFENDANT DOUGLAS MACMARTIN's MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF HIS MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND MOTION TO STRIKE**

1  *Id.* (quoting *Arthur v. Offit*, No. 01:09-cv-1398, 2010 WL 883745, at *6 (E.D. Va. Mar. 10, 2010)).

2  The Complaint is dismissible for a host of reasons. The Court lacks personal jurisdiction over

3  MacMartin, who is a permanent resident of New York and lacks the exceptional contacts with

4  California necessary to warrant the exercise of general personal jurisdiction over a non-California

5  domiciliary. Nor can the Court exercise specific personal jurisdiction over MacMartin since he has

6  not "expressly aimed" his allegedly tortious conduct at California. The fact that the Plaintiff is a

7  California resident is simply not enough under California law.

8  Plaintiff's claims should also be dismissed because Plaintiff has failed to plead actionable

9  defamation. The two statements at issue here are clearly statements of constitutionally-protected

10  opinion based on MacMartin's knowledge of the field of geoengineering. The statements are listed

11  under the heading "feedback," and are replete with language that makes clear that MacMartin is

12  expressing his opinion. Further, Plaintiff has failed to plead actual malice, which is a requirement

13  because Plaintiff is a limited purpose public figure. Plaintiff has not plausibly alleged that MacMartin

14  provided his feedback with knowledge of (or reckless disregard as to) its alleged falsity. Plaintiff's

15  interference claims are similarly insufficiently pled and should be dismissed.

16  Lastly, Plaintiff's lawsuit is a classic SLAPP lawsuit, and for the reasons stated herein,

17  Defendant's anti-SLAPP motion to strike should be granted.

18  **II.   STATEMENT OF FACTS**

19  Defendant MacMartin has been a research associate at Cornell University since 2015. In 2014,

20  he purchased a home in New York State. (MacMartin Decl., ¶¶ 2-3.) Since that time, New York has

21  been his permanent residence—he is registered to vote in New York, his car is registered in New York,

22  he has a New York driver's license, and he pays New York property taxes. (*Id.* ¶¶ 3-4.) Until 2015,

23  prior to moving to New York, and long before the Claim Review at issue in this suit was published,

24  MacMartin held a position as Research Professor at Caltech. (*Id.* ¶ 7.) He has never, however, owned

25  any real estate in California. (*Id.* ¶ 6.) Since 2015, MacMartin has received grant money through

26  Caltech, for which he is given the title "visiting associate." (*Id.* ¶ 8.) However, since 2017, the only

27  work MacMartin has performed relating in any way to Caltech concerns the design of the "Thirty

28  Meter Telescope," an international project. (*Id.*) Since 2018 (before the Covid-19 pandemic)

MacMartin has participated in all meetings related to this project *virtually* and from *outside of California*, not in person. (*Id.*)  Indeed, even between 2015 and 2018, most meetings MacMartin attended relating to Caltech he attended virtually.  (*Id.*)   At the time the Complaint was filed, MacMartin had not travelled to California since 2019, and those visit were personal and to attend a scientific conference.  (*Id.* ¶ 9.)   MacMartin has not taught a class at Caltech since 2015.  (*Id.* ¶ 8.) Since 2015, he has taught every fall (and some spring) semesters at Cornell, as well as over a dozen guest lectures at Cornell.  (*Id.* ¶ 5.)  He considers New York to be his permanent home and does not intend to move outside of the State of New York. (*Id.*, ¶ 11.)

Plaintiff alleges that SRM is a form of geoengineering that governments and others are currently using to manipulate Earth's weather.  (*See generally* Compl.)  The crux of the Claim Review is that SRM is *not* in current use and there is no conspiracy covering up SRM efforts.  (*Id.* ¶ 56.)  The *theory* behind SRM is that injecting sulfur dioxide (or other chemical) particles into the stratosphere can act to reflect solar radiation and, consequently, lowers global temperatures.  (*Id.* ¶ 10.)

According to the Complaint, Wigington owns and operates GeoEngineering Watch, an organization that "investigates and publishes information regarding SRM through a website, geoengineeringwatch.org, and in-person and on-air presentations."  (*Id.* ¶ 15.)  GeoEngineering Watch's website features posts in which Wigington claims to have evidence that SRM is currently being used, unbeknownst to the public, and to the detriment of human health.  These posts include pictures and film footage of jets supposedly leaving "aerosols," (or chemical trails) in the sky.  (*Id.*) Wigington presented his theories regarding the supposed implementation of SRM technologies in his documentary, *The Dimming*.  (*Id.* ¶¶ 49-50.)  On March 10, 2021, Plaintiff published his documentary on YouTube and Facebook.  (*Id.* ¶ 54.)

On March 25, 2021, Climate Feedback, a nonprofit dedicated to "verifying the credibility of influential claims and media coverage that claims to be scientific" regarding climate (a nonparty to this lawsuit) published on its public website a "Claim Review" of certain SRM claims in Plaintiff's documentary.  (*Id.* ¶ 55; MacMartin Decl. Ex. 1.)  The Claim Review critiqued the SRM claims in the

1  documentary and posited that there was no evidence that solar geoengineering was happening or

2  having a catastrophic effect on the planet or human health.  (Compl. ¶ 56.)[1]

3        Appended to the Claim Review, under a heading titled "Scientists' Feedback," was a short

4  statement by MacMartin.  (*Id.*)  MacMartin, a research associate at Cornell University who teaches

5  courses on geoengineering, has also researched and published materials on SRM.  (*Id.*)  MacMartin,

6  however, maintains that SRM has only been explored as a theoretical possibility.  (*Id.*)  MacMartin's

7  "feedback" on the Claim Review called the claims that aircraft contrails are actually evidence of a

8  secret SRM that is already being deployed "pure fantasy."  (*Id.*)  Specifically, the "feedback" states:

9  
10  > All of these claims are pure fantasy.  The alternative hypothesis to their supposed
> conspiracy (which would require cooperation from hundreds of thousands of people in
> every single country on the planet) is the rather mundane belief that clouds are made
11  > of water, and since jet fuel is hydrocarbon, burning it produces water vapour as well as
> cloud condensation nuclei, and thus produces contrails; basically an artificial cirrus.

12  > The SRM for global warming mitigation would involve putting things like sulfate
> (which wouldn't leave trails) much higher in the atmosphere than any current aircraft
13  > can fly.  If that was being done, it would be trivially detectable from satellite
> observations.  We also know with 100% certainty that (a) the aircraft contrails they see
14  > aren't geoengineering, and (b) no-one is doing geoengineering.

15  (*Id.*)  The "feedback" nowhere mentions or refers to Wigington. (MacMartin Decl. Ex. 1 at p. 3.)  The

16  Complaint only alleges the feedback's first and last sentences are defamatory.  (Compl. ¶¶ 73-79.)

17        Plaintiff alleges that Climate Feedback provides third-party fact checking for Facebook and

18  that Plaintiff's documentary was subsequently tagged with a "FALSE" label on Facebook and was

19  therefore no longer available for public viewing.  (*Id.* ¶ 57.)  Plaintiff alleges that, as a result, activity

20  sharing his Facebook posts has declined 90%, (*id.* ¶ 68), and he has experienced reduced viewership

21  for his documentary and his other videos.  (*Id.* ¶ 69.)

22  **III.   ARGUMENT**

23     **A.   Plaintiff's Claims Should Be Dismissed for Lack of Personal Jurisdiction.**

24        **1.   Legal Standard**

25  Pursuant to Rule 12(b)(2), a court must dismiss a case if it lacks personal jurisdiction over the

26  

27  [1] Wigington suggests that MacMartin drafted the "Review," not just the "Feedback."  That allegation
is belied by the plain text of the article.  The review itself references MacMartin in third person ("As
Doug MacMartin notes below").  (MacMartin Decl., Ex. 1 at p. 2.)   The Feedback section lists
28  MacMartin's name and title in the byline with a colon, followed by the text of the Feedback.

4

defendant.  California's long arm statute provides that "a court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this State or of the United States."  Cal. Civ. Proc. Code § 410.10.  California courts may exercise jurisdiction "to the full extent that such exercise comports with due process." *Elite Semiconductor, Inc. v. Anchor Semiconductor, Inc.*, No. 5:20-cv-06846-EJD, 2021 WL 3037701, at *3 (N.D. Cal. July 19, 2021) (quotations omitted). Due process allows personal jurisdiction over a non-resident defendant only when the defendant has certain minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.  *See Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945); *see also Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2003). The Court may consider evidence presented in affidavits in determining personal jurisdiction on a motion pursuant to Rule 12(b)(2).  *Elite Semiconductor*, 2021 WL 3037701, at *3 (quoting *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986)).

### 2.     This Court Lacks General Personal Jurisdiction Over Defendant

"General jurisdiction refers to personal jurisdiction over a defendant to adjudicate any and all claims against the defendant, regardless of whether those claims arise from the defendant's contacts with the forum." *Id*.  Just last year, the Supreme Court of the United States made clear that "[o]nly a select set of affiliations with a forum will expose a defendant to such sweeping jurisdiction." *Ford Motor Co. v. Montana Eighth Judicial Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021).  To that end, the Supreme Court reiterated that the "paradigm" case for general personal jurisdiction over an individual is in their "place of domicile." *Id.* (citing *Daimer AG v. Bauman*, 571 U.S. 117, 137 (2014)); *see also Stage Nine Design, LLC v. Rock-It Cargo USA, LLC*,   No. 2:21-cv-00722-WBS-AC, 2021 WL 3565310, at *3 (E.D. Cal. Aug. 12, 2021) ("In what [the Supreme Court] has called the 'paradigm' case, an individual is subject to general jurisdiction in her place of domicile.").  "The Supreme Court's recent guidance on the theory of general jurisdiction has made clear that the concept of 'home' should be understood narrowly," such that it would be the "exceptional [] case in which a defendant would be 'at home' in a state other than one that falls within the paradigm." *Senne v. Kansas City Royals Baseball Corp.*, 105 F. Supp. 3d 981, 1018 (N.D. Cal. 2015).  This extension of the reach of general

**DEFENDANT DOUGLAS MACMARTIN's MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF HIS MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND MOTION TO STRIKE**

personal jurisdiction is only exercised in "rare instances." *Elite Semiconductor*, 2021 WL 3037701, at *7.

As an initial matter, and most importantly, MacMartin is not domiciled in California; his domicile is New York where, for at least the last five years, he:  lives with his family, owns property, has a drivers' license, pays property taxes, is registered to vote, and has a registered automobile. (MacMartin Decl. ¶¶ 3-4, 11.)  MacMartin does not live in California and has never owned real estate in California.  (*Id.* ¶ 6.)  *See White v. Lemendola*, No. S-10-3303, 2011 WL 2414420, at *2 (E.D. Cal. Jun. 8, 2011) (relevant factors in establishing domicile include place of residence, voter registration, car registration and driver's license, ownership of property, place of employment, and location of family).  Nor are there any "exceptional" circumstances that would warrant the "rare" expansion of general personal jurisdiction.  MacMartin's California contacts remain severely limited.  While he receives funding through Caltech, all of the work that MacMartin does relating to that funding is done in New York.  (MacMartin Decl. ¶8.)  His connection with Caltech does not require him to be on the California campus *at all* and he has not taught a class there in more than seven years (indeed, at the time the lawsuit was filed, he had not been to California since 2019, and even then, traveled only for a scientific conference and for the purpose of visiting extended family, whom he visited again over Christmas 2021).  (*Id.* ¶¶ 7-9.)  Since 2017, the Caltech arrangement has simply allowed MacMartin to do work on an international telescope project, and since 2018, MacMartin has participated virtually in any meetings related to this project, even before the Covid-19 pandemic (and was mostly virtual between 2015 and 2018). (*Id.* ¶ 8.)

Courts have routinely held that a nonresident who engages in remote work for a California-based company does not, simply by virtue of this relationship with a California-based company, become subject to general personal jurisdiction in California.  *See, e.g.*, *Pedus Bldg. Servs., Inc. v. Allen*, 96 Cal. App. 4th 152, 164 (2002) (declining to find general personal jurisdiction in California over former employee of a California company, who did not live in California, even where employee made substantial number of business trips to California and received monetary and health benefits from the California company); *Numeric Analytics, LLC v. McCabe*, 161 F. Supp. 3d 348, 354-55 (E.D. Pa. 2016) (declining to find general personal jurisdiction over former employees of a Pennsylvania

1  company, who did not live in Pennsylvania, even where employees worked for a Pennsylvania

2  company, were paid by a Pennsylvania employer, had medical coverage, medical benefits and

3  retirement plans administered from Pennsylvania and were paid salaries using a Pennsylvania bank);

4  *see also Span Const. & Eng'g, Inc. v. Stephens*, No. CIV-F-06-0286 AWI DLB, 2006 WL 1883391,

5  at *6 (E.D. Cal. July 7, 2006) ("[W]hen an individual conducts business that requires their occasional

6  presence in a state, courts have not found sufficient contacts for general jurisdiction.").

7          Nor are MacMartin's visits to California—though rare—sufficient to confer general personal

8  jurisdiction.  *Elite Semiconductor*, 2021 WL 3037701, at *7  (holding that an individual's frequent

9  visits to a forum does justify the exercise of general jurisdiction); *Span Const. & Eng'g, Inc.*, 2006

10  WL 1883391, at *6 (same).

11                  **3.      This Court Lacks Specific Personal Jurisdiction Over Defendant**

12          Courts may exercise specific personal jurisdiction over a nonresident defendant "when the

13  nature and quality of the defendant's contacts with the forum state are significant in relation to the

14  specific cause of action."  *Bubble Genius LLC v. Smith*, No. CV 15-0066 PA, 2015 WL 4399483, at

15  *2 (C.D. Cal. July 17, 2015).  Where the relevant cause of action consists of an intentional tort, "[a]

16  forum State's exercise of jurisdiction over an out-of-state intentional tortfeasor must be based on

17  intentional conduct by the defendant that creates the necessary contacts with the forum." *Walden v.*

18  *Fiore*, 571 U.S. 277,  286 (2014); *see also Burdick v. Super. Ct.*, 233 Cal. App. 4th 8 (2015).

19          The Ninth Circuit has established a three-prong test for the exercise of specific jurisdiction

20  over a non-resident: (1) the defendant has purposefully availed itself of forum benefits with respect to

21  the matter in controversy; (2) the controversy is related to or arises out of the defendant's contact with

22  the forum; and (3) the exercise of jurisdiction would comport with fair play and substantial justice.

23  *Schwarzenegger*, 374 F.3d at 802.

24          In Internet-based defamation cases, such as this one, California courts employ the "effects"

25  test established in *Calder v. Jones*—at times referred to as the "purposeful direction" test—to

26  determine whether a given defendant has purposefully availed itself of the forum. 465 U.S. 783, 789

27  (1984); *see also Pavlovich v. Super. Ct.*, 29 Cal.4th 262, 269 (2002).  Critically, "purposeful direction"

28  requires that a plaintiff demonstrate that "the defendant expressly aimed the tortious conduct at the

1    forum state such that the forum state was the focal point of the tortious activity." *Burdick*, 233 Cal.

2    App. 4th at 19-20; *Pavlovich*, 29 Cal.4th at 269; *ViaView, Inc. v. Retzlaff*, 1 Cal. App. 5th 198, 218

3    (2016).

4         The "purposeful direction" test is simply not satisfied here.  Plaintiff does not allege that

5    MacMartin's inclusion of feedback regarding the SRM theory to the Climate Feedback Claim Review

6    was purposefully directed to California.  Climate Feedback is a public website, and there is therefore

7    no reason to believe (and Plaintiff cannot plausibly allege) that it is intended primarily to serve a

8    California audience or operate with a focus on California.  Indeed, the fact that Climate Feedback is a

9    public website "would mean it would have been less likely [defendant] intentionally targeted

10   California as opposed to any other jurisdiction." *Burdick*, 233 Cal. App. 4th at 25.  Plaintiff does

11   not—and cannot—allege that a significant number of California residents saw the feedback on Climate

12   Feedback, or that the website was targeted in any way to California.

13        Ultimately, the only connection between the allegedly defamatory statements made by

14   MacMartin and California is that *Plaintiff* lives in California.  But as California courts have made

15   clear, "merely posting on the Internet negative comments about the plaintiff and knowing the plaintiff

16   is in the forum state are insufficient to create minimum contacts." *Burdick*, 233 Cal. App. 4th at 25-

17   26 (declining to exercise specific personal jurisdiction over non-resident defendant based on the

18   defendant's posting of allegedly defamatory statements on a Facebook page); *ViaView, Inc.*, 1 Cal.

19   App. 5th at 219 (declining to find personal jurisdiction over non-resident where no allegation

20   defamatory posts were aimed at a California audience, that a significant number of California residents

21   saw them, or that the social media platforms they used were targeted to California).  Indeed, as one

22   California federal court recently held, "[t]he Supreme Court explicitly rejected such a basis for

23   personal jurisdiction in *Walden*, reiterating both that personal jurisdiction must arise from the

24   defendant's, *not the plaintiff's*, contacts to the forum state, and that the 'minimum contacts' analysis

25   looks to the defendant's contacts with the forum state itself, not the defendant's contacts with persons

26   who reside there." *Williams v. Kula*, No. 20-CV-1120 TWR (AHG), 2020 WL 7770915, at *6 (S.D.

27   Cal. Dec. 29, 2020) (emphasis added) (quoting *Walden v. Fiore*, 571 U.S. 284-85 (2014)).

28

**DEFENDANT DOUGLAS MACMARTIN's MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF HIS MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND MOTION TO STRIKE**

**B.      Plaintiff Has Failed to Plead Actionable Defamation**

The Complaint alleges only that two statements in the "Feedback" are defamatory:

- "All of these claims are pure fantasy"
- "We also know with 100% certainty that (a) the aircraft contrails they see aren't geoengineering, and (b) non one is doing geoengineering."

(Compl. ¶¶ 73-79.)  As set forth below, these statements are not actionable defamation.

### 1.      Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  While  the court must deem all allegations in the complaint as true and draw all reasonable inferences in plaintiff's favor, "pleadings that contain no more than conclusions are not entitled to the assumption of truth."  *Basile v. LA Film School, LLC*, 827 F. App'x 649, 652 (9th Cir. 2020) (quoting *Iqbal*, 556 U.S. at 679). "Formulaic recitation of the elements of a cause of action  will not do … Factual allegations must be enough to 'raise a right to relief above the speculative level.'"  *Pacific Shores Hosp. v. EMCOR Group Inc.*, No. CV 10-07480 DDP (PLAx), 2011 WL 13217541, at *1 (E.D. Cal. Feb. 4, 2011) (quoting *Twombly*, 550 U.S. at 555).

### 2.      The Two Statements at Issue Are Not Capable of Defamatory Meaning

Under California law, the elements of a defamation claim are (1) a publication that is (2) false, (3) defamatory, (4) unprivileged, and (5) has a natural tendency to injure or cause special damage. *See John Doe 2 v. Super. Ct.*, 1 Cal. App. 5th 1300, 1312 (2016).  Whether a statement is capable of defamatory meaning is a question of state law.  *See Wynn v. Chanos*, 75 F. Supp. 3d 1228, 1233 (N.D. Cal. 2014). California Civil Code section 45 defines libel as "a false and unprivileged publication by writing …which exposes any person to hatred, contempt, ridicule or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injury him in his occupation."  Cal. Civ. Code § 45.

California courts consider the context in which the allegedly defamatory statement was made to determine whether it may reasonably be construed as having a defamatory meaning. *See, e.g., John*

1    *Doe 2*, 1 Cal. App. 5th at 1312 ("[w]ords which standing alone may reasonably be understood as

2    defamatory may be so explained or qualified by their context as to make such an interpretation

3    unreasonable.).

4        MacMartin's "feedback" is simply one volley in a long-running dispute about whether SRM

5    is currently being utilized by governments and others around the globe—or not.  (MacMartin Decl.

6    Ex. 1.)  Nothing in the feedback suggests that *Wigington himself* is dishonest, engaging in criminal

7    activity, or lacking in integrity by holding his SRM positions. (*Id.* at p. 3.) To the contrary—

8    MacMartin refers to his position as an "alternate hypothesis."  (*Id.*)  In providing Climate Feedback

9    with his feedback on a matter in his field—one in which Wigington takes a different position—

10   MacMartin was simply engaging in debate by opposing Wigington's position.  This is not the stuff of

11   defamation.  *See, e.g.*, *Weiss v. Mayda*, No. B071255, 1993 WL 723475, at \*2 (Cal. Ct. App. Dec. 29,

12   1993) ("Mere expressions of opinion or severe criticism are not libelous if they clearly go only to the

13   merits or demerits of a condition, cause, or controversy which is under public scrutiny."); *Info. Control

14   Corp. v. Genesis One Computer Corp.*, 611 F.2d 781, 784 (9th Cir. 1980) (same); *W. Broad. Co. v.

15   Times-Mirror Co.*, 14 Cal. App. 2d 120, 124 (1936) ("it is not libelous *per se* to publish an *answer*

16   challenging the correctness of an opponent's statements and charging such opponent with 'telling

17   falsehoods' or 'falsely asserting.'").

18       By asserting this defamation action, Plaintiff is asking the Court to serve as a supreme peer-

19   reviewed journal—and to decide once and for all whether Plaintiff is correct that SRM is being secretly

20   being used by governments and companies around the world.  That is because in order to prevail in

21   this case, Plaintiff must prove that he is *right* and that MacMartin and countless other scientists are

22   *wrong*.  But that is not the role of this or any other court.  The controversy here—charitably read—is

23   an academic question and "not the sort of thing that courts or juries resolve in the context of a

24   defamation action."  *Arthur*, 2010 WL 883745, at \*6 ("Plaintiff may wish to defend in Court the

25   credibility of her conclusions about the dangers of vaccines, the validity of the evidence she offers in

26   support of those theories, and the policy choices that flow from those views—as well as her own

27   credibility for having advanced those positions. These, however, are academic questions that are not

28   the sort of thing that courts or juries resolve in the context of a defamation action. Rather, an actual

1   statement of fact that is capable of being proven true or false is required as a matter of law."); *see also*

2   *Partington v. Bugliosi*, 56 F.3d 1147, 1154 (9th Cir. 1995) ("When … an author writing about a

3   controversial occurrence fairly describes the general events involved and offers his personal

4   perspective about some of its ambiguities and disputed facts, his statements should generally be

5   protected by the First Amendment."). To find otherwise, as the Ninth Circuit has held, "there would

6   be no room for expressions of opinion by commentators, experts in a field, figures closely involved in

7   a public controversy, or others whose perspectives might be of interest to the public." *Partington*, 56

8   F.3d at 1154.[2]

9          **3.      The Two Challenged Statements Constitute Protected Opinion.**

10               **a.      Standard for Determining Opinion**

11   A claim for defamation requires the publication of a false statement of fact.  *See Siazon v. Hertz*

12   *Corp.*, 847 F. App'x 448, 452-53 (9th Cir. 2021).  Statements of opinion are not actionable;  "However

13   pernicious an opinion may seem, we depend on its correction not on the conscience of judges and

14   juries but on the competition of other ideas." *John Doe 2*, 1 Cal. App. 5th at 1313 (quoting *Gertz v.*

15   *Robert Welch*, 418 U.S. 323, 339-40 (1974)).

16   California courts have developed a totality of the circumstances test to determine whether an

17   alleged defamatory statement is one of fact or opinion, considering: (1) the alleged defamatory

18   statement in its broad context, which includes the general tenor of the entire work, the subject of the

19   statement, the setting, and the format of the work; (2) the specific context and content of the statement,

20   with a focus on the extent of figurative or hyperbolic language used as well as the reasonable

21   expectations of the audient in that particular situation; and (3) whether the statement itself is

22   sufficiently factual to be susceptible of being proven to be true or false.  *See Herring Networks, Inc.*

23   *v. Maddow*, 8 F.4th 1148, 1157 (9th Cir. 2021); *Underwager*, 69 F.3d at 366.

24   In connection with determining whether a statement is fact or opinion, the Ninth Circuit has

25   held that "[p]ublications by which it is sought to convey pertinent information to the public in matters

26   of public interests are permitted wide latitude."  *Info. Control Corp.*, 611 F.2d at 784.  Specifically,

27

---

28   [2] "A 'public-figure plaintiff must show the falsity of the statements at issue in order to prevail in a suit for defamation.'"  *Brown v. Kelly Broadcasting Co.*, 48 Cal.3d 711, 753 n.37 (1989)).

where "[a scientific issue] remains an open question of substantial public importance, contributions to the debate are protected by the First Amendment.  If a consensus is ultimately reached [], [a plaintiff] may have been an unintended victim of the Constitution's ardent free speech protections.  We risk such results in order to foster a public forum for the robust debate that identifies scientific truths." *Metabolife Int'l., Inc. v. Wornick*, 72 F. Supp. 2d 1160 (1999), *overturned in part on other grounds by Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 850 (9th Cir. 2001); *see also Campanelli v. Regents of the Univ. of Cal.,* 44 Cal. App. 4th 572, 578 (1996) (where "comments are made in the arena of public debate and controversy, a reviewing court has an obligation to examine the whole record in order to ensure that there is no infringement of the First Amendment guarantee of free expression"); *Info. Control Corp.*, 611 F.2d at 784 ("even apparent statements of fact may assume the character of statements of opinion, and thus be privileged, when made in public debate, heated labor dispute, or other circumstances in which an "audience may anticipate efforts by the parties to persuade others to their positions by use of epithets, fiery rhetoric or hyperbole.").

### b.    A Review of the Two Statements' Context Reveals They Are Statements of Opinion.

As an initial matter the two alleged defamatory statements were published in a section of an article titled "Scientist' Feedback."  The plain meaning of the word "feedback" is opinion.  This context alone would give a reader an impression that the statements therein are the opinion of the scientist.  In addition, Plaintiff alleges that the "Claim Review" was a movie review of *The Dimming*, and the only writings more associated with "opinion" than movie reviews would be editorials or op-eds.  *See, e.g.*, *Underwager*, 69 F.3d at 367 (characterizing statements made about plaintiff as "expressions of the speakers' professional points of view (opinions) rather than factual assertions" where plaintiff and defendants were known to be "on opposite sides of the heated debate over child witness reliability").

In considering the *specific* content of the alleged defamatory statements, courts take note of both the extent to which figurative and hyperbolic language is used and the reasonable expectations of the readers in light of such usage.  *Ferlauto v. Hamsher*, 74 Cal. App. 4th 1394, 1402 (1999) ("rhetorical hyperbole, vigorous epithets, lusty and imaginative expressions of  contempt, and

language used in a loose, figurative sense" have all been accorded constitutional protection"); *see also Herring Networks*, 8 F.4th at 1160.  Here, the two challenged statements and their surrounding context include undeniably hyperbolic language, such as the opening that "[a]ll of these claims are pure fantasy" and the suggestion that for the SRM theory to work, it would "require cooperation from hundreds of thousands of people in every single country on the planet." (MacMartin Decl. Ex. 1 at p. 3.)  This language clearly signals opinion.  Indeed, MacMartin specifically refers to his position as a "*hypothesis*" (*id.*)—another clear indicator that the text that follows is his own opinion—and goes on to describe his position as the "mundane *belief*" about the source of contrails. (*Id.*)

Moreover, here, the reader is aware of the facts supporting MacMartin's opinion:  they are laid out extensively (with hyperlinks and citations) in the review that immediately precedes MacMartin's feedback.  *John Doe 2*, 1 Cal. App. 5th at 1314 ("when a communication identifies nondefamatory facts underlying an opinion, or the recipient is otherwise aware of those facts, a negative statement of opinion is not defamatory") (quoting Restatement Second of Torts § 566 com. b, p. 171 (a "pure type of expression of opinion" occurs "when both parties to the communication know the facts or assume their existence and the comment is clearly based on those assumed facts and does not imply the existence of other facts in order to justify the comment.  The assumption of the facts may come about because someone else has stated them or because they were assumed by both parties as a result of their notoriety or otherwise.")); *see also Herring Networks*, 8 F.4th at 1159.  Moreover, MacMartin's views are the commonly accepted scientific views that *The Dimming* discusses at length and attempts to rebut—so these views are discussed within the documentary itself!

**4.    Plaintiff Is a Limited Public Figure And Has Not Alleged Actual Malice.**

Plaintiff's defamation claim should be dismissed for the additional, independent reason that he fails to plead actual malice.   Where, as here, the plaintiff in a defamation action is a public figure, the plaintiff must allege that the defendant  acted with actual malice – that is, with knowledge or reckless disregard as to the falsity of the alleged defamatory statements – in order to recover. *See Penrose Hill*, 479 F. Supp. 3d at 856.

A "limited purpose" public figure is one who "voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues."

*Reader's Digest Assn, v. Super. Ct.*, 37 Cal.3d 244, 253 (1984). Courts will find a "limited purpose public figure" where "(1) there is a public controversy; (2) the plaintiff has undertaken some voluntary act through which he or she sought to influence resolution of the public issue; and (3) the alleged defamatory statements are germane to the plaintiff's participation in the controversy." *Ampex Corp. v. Cargle*, 128 Cal. App. 4th 1569, 1577 (2005).

There is no dispute that Wigington has put himself in the public eye by promoting a controversial stance about SRM, which is clearly a matter of public interest. He "operates a sole proprietorship, GeoEngineering Watch, that investigates and published information regarding SRM through a website … social media, and in-person and on-air presentations." (Compl. ¶ 15.) Plaintiff also produced *The Dimming*, a documentary intended to present his theory along with allegedly supporting evidence. (*Id.* ¶¶ 49-51.) There is no question that Plaintiff is a limited public figure, and the challenged statements directly address Plaintiff's participation in the controversy.

Wigington, however, has *not* pled that MacMartin made the allegedly defamatory statements with "actual malice; that is, 'with knowledge of [their] falsity or with reckless disregard for the truth.'" *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 265 (9th Cir. 2013) (quoting *Gertz*, 418 U.S. at 328, 342). To plead actual malice, a plaintiff must show that the defendant realized that his statement was false or that he "entertained serious doubts" as to the truth of the statements. *Id.* at 271. Actual malice must be pled with specificity. *Resolute Forest Prods.*, 302 F. Supp. 3d at 1018. Indeed, "[p]leading actual malice is a "demanding burden" and "general allegations that a defendant should have known or should have investigated the truth of his or her statements do not adequately plead actual malice." *Tull v. Higgins*, No. 21-cv-01566-DMR, 2021 WL 6116971, at *7 (N.D. Cal. Dec. 27, 2021 (quoting *Wynn*, 75 F. Supp. 3d at 1239). Actual malice is "not measured by whether a reasonably prudent man would have published or would have investigated before publishing," but by whether "the defendant in fact entertained serious doubts as to the truth of [its] publication." *Resolute Forest Prods.*, 302 F. Supp. 3d at 1018.

The Complaint falls far short of alleging that MacMartin wrote his "feedback" with knowledge of its falsity or with reckless disregard as to its truth. While Plaintiff *alleges* that MacMartin wrote his feedback without having seen the documentary, (Compl. ¶ 58.), that matters not. Plaintiff offers

no plausible evidence for this allegation (and points to sources cited in the Climate Review—which, on its face, MacMartin did not write).  And even if Plaintiff is correct that MacMartin did not watch *The Dimming*, certainly the Complaint is replete with references to MacMartin's knowledge of and understanding of the debate at hand.  In any event, the Supreme Court has made clear that "mere proof of a defendant's failure to investigate, without more, cannot establish reckless disregard for the truth." *See Gertz*, 418 U.S. at 332.

Plaintiff also appears to rely on his history of contentious debate with MacMartin.  (*See* Compl. ¶¶ 32-48.)  But this reliance completely undercuts any hope of pleading "actual malice."  Allegations as to any ill will or hostility that MacMartin allegedly held towards Plaintiff—true or not—are utterly irrelevant for the actual malice determination.  *Ampex Corp.*, 128 Cal. App. 4th at 1579; *see also Tull*, 2021 WL 6116971, at *8.  Moreover, the fact that the Complaint goes through this history demonstrates that MacMartin has long held the opinions that he expressed in the "feedback."  It is simply implausible to infer that MacMartin somehow *knows* (or recklessly disregards) that the position that he has held for years on this matter, squarely within his field of study, is completely wrong and that Plaintiff is correct.  It is far more plausible that he actually holds the belief that SRM is not in widespread use and that there is not a vast global conspiracy.

For the same reason, Plaintiff's attempt to plead actual malice by alleging that MacMartin "has a vested financial interest in his assertions that [Plaintiff's] claims 'are pure fantasy' … because, among other things, [MacMartin] is operating under a $1 million grant for SRM work" (Compl. ¶ 60) is also unavailing.  *Ampex Corp.*, 128 Cal. App. 4th at 1579; *see also Harte-Hanks Commc'ns Inc. v. Connaughton*, 491 U.S 657, 665 (1999) ("Motive in publishing a story … cannot provide a sufficient basis for finding actual malice.").

Unable to plead actual malice, Plaintiff's defamation claim must be dismissed.

**C.      Plaintiff Has Failed to Plead Interference With Prospective Economic Relations.**

Plaintiff's claims of intentional and negligent interference should be dismissed as they are duplicative and based on the same conduct as Plaintiff's defamation claim.  *See Palm Springs Villas II Homeowners Ass'n, Inc. v. Parth*, 248 Cal. App. 4th 268, 290 (2016).

**DEFENDANT DOUGLAS MACMARTIN's MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF HIS MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND MOTION TO STRIKE**

In addition, Plaintiff's allegations on these causes of action are plainly insufficient.[3] "Interference with prospective economic advantage requires a plaintiff to allege an act that is wrongful independent of the interference itself." *CRST Van Expedited, Inc. v. Werner Enters., Inc.*, 479 F.3d 1099, 1108 (9th Cir. 2007). Here, the only alleged "wrongful act" is the alleged defamation, and for the reasons set forth above, Plaintiff does not plausibly allege defamation. The tortious interference claims should therefore be dismissed. *See Block v. eBay, Inc.*, 747 F.3d 1135, 1141 (9th Cir. 2014) (dismissing interference claim in the absence of independent wrong).

A plaintiff also must allege the existence of an *actual* economic relationship or protected expectancy with a third person, as opposed to a mere hope of future transactions, in order to recover. *See Brown v. Allstate Ins. Co.*, 17 F. Supp. 2d 1134, 1140 (S.D. Cal. 1998). Here, Plaintiff's unadorned allegation that he has an economic relationship *with Facebook* (Compl. ¶¶ 70, 84) is plainly insufficient. The Complaint does not allege that *Facebook* was providing Plaintiff with any direct economic benefit, transactions or even donations. Instead, Plaintiff's claims are that removal of his documentary from Facebook affected his relationship with other Facebook subscribers—not *Facebook* itself.[4] Courts have found interference claims insufficiently pled where plaintiffs offered conclusory allegations regarding defendant's knowledge of the economic relationship at issue. *See Soil Retention Prods. v. Brentwood Indus.*, 521 F. Supp. 3d 929, 962 (S.D. Cal. 2021) (allegations of knowledge conclusory; "there [were] no factual allegations indicating that a certain person with Plaintiff's corporation told another person with Defendant's corporation that they were relying on the molds for a contract with a specified third party").

Finally, this claim should be dismissed because it is pled in the most conclusory terms—it alleges no specific contracts or economic expectancy with Facebook, does not allege which specific

---

[3] The elements for interference with prospective economic relations are: "(1) [a]n economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship (or breach of a duty of care via negligent conduct for a claim for negligent interference); (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." *See Nestlé United States, Inc. v. Crest Foods, Inc.*, No. LA CV16-07519 JAK (AFMx), 2019 WL 2619635, at *7 (C.D. Cal. Mar. 8, 2019).

[4] Moreover, any such claims about that relationship (as meritless as they would be) have nothing to do with MacMartin.

**DEFENDANT DOUGLAS MACMARTIN's MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF HIS MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND MOTION TO STRIKE**

1  customers have been disrupted (other than speculative potential donors, which does not satisfy the

2  plausibility standard), and does not allege an actual disruption to negotiations.  Dismissal is therefore

3  appropriate.  *See Silicon Knights, Inc. v. Crystal Dynamics, Inc.*, 983 F. Supp. 1303, 1313 (N.D. Cal.

4  1997) (finding the pleadings insufficient where the complaint failed to allege an actual disruption to

5  negotiations or potential contracts.); *see also Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137,

6  1151 (9th Cir. 2008) (finding tortious interference claim to be properly dismissed where plaintiff

7  "merely states in a conclusory manner that 'it has been harmed because its ongoing business and

8  economic relationships with Customers have been disrupted… [plaintiff] does not allege, for example,

9  that it lost a contract nor that a negotiation with a Customer failed.").

10  **D.    The Court Should Also Strike The Complaint Under California's Anti-SLAPP**

11  **Statute**

12  California law provides for "dismissal of certain actions called Strategic Lawsuits Against

13  Public Participation, or SLAPPs."  *Resolute Forest Prods.*, 302 F. Supp. 2d at 1024.  "The California

14  legislature enacted the anti-SLAPP statute to allow early dismissal of meritless first amendment cases

15  aimed at chilling expression through costly, time-consuming litigation."  *Id.*[5]  To succeed on an anti-

16  SLAPP motion, a "'defendant must [first] show that the plaintiff challenges an act in furtherance of

17  protected expression, as defined by California statute."  *Appel v. Wolf*, 839 F. App'x 78, 80 (9th Cir.

18  2020) (citing Cal. Code Civ. Proc. § 425.16(e).)

19  The Ninth Circuit sets forth a two-pronged approach for reviewing anti-SLAPP motions.

20  "First, the defendant must 'make a prima facie showing that the plaintiff's suit arises from an act by

21  the defendant made in connection with a public issue in furtherance of the defendant's right to free

22  speech under the United States or California Constitution.'"  *In re NCAA Student–Athlete Name &*

23  *Likeness Licensing Litig.*, 724 F.3d 1268, 1272–73 (9th Cir. 2013). Specifically, a defendant must

24  show the plaintiff's claims are based on a written or oral statement "made in a place open to the public

25  or a public forum in connection with an issue of public interest," or based on conduct that furthered

---

26  [5] "The Ninth Circuit has made clear that California anti-SLAPP motions to strike and entitlement to
   fees and costs are available to litigants proceeding in federal court."  *Resolute Forest Prods.,* 302 F.
27  Supp. 3d at 1024 (citing *Thomas v. Fry's Elecs., Inc.*, 400 F.3d 1206, 1206 (9th Cir. 2005).  This is
   particularly so where, as here, the claims brought are state law claims in federal court because of
28  diversity jurisdiction.  *Id.*

**DEFENDANT DOUGLAS MACMARTIN's MEMORANDUM OF POINTS AND AUTHORITIES IN**
**SUPPORT OF HIS MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND MOTION TO STRIKE**

"the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." Cal. Code Civ. Proc. § 425.16(e)(3), (4). The California legislature has instructed that public issues should be "construed broadly." *Id.* § 425.16 (a). California courts "have broadly construed public interest to include not only governmental matters, but also private conduct that impacts a broad segment of society and/or that affects a community in a manner similar to that of a governmental entity." *Resolute Forest Prods.*, 302 F. Supp. 3d at 1026. Second, plaintiffs must establish "a reasonable probability" that they "will prevail" on their claims. *Batzel v. Smith*, 333 F.3d 1018, 1024 (9th Cir. 2003) (citing Cal. Code Civ. Proc. § 425.16(b)(1)).

### 1.    Prong One: MacMartin Engaged in Protected Conduct

This lawsuit is subject to an anti-SLAPP motion because MacMartin was engaged in an act in furtherance of protected expression. The Claim Review, and MacMartin's "feedback" evaluated (and criticized) the SRM claims made in Wigington's documentary. MacMartin's conduct is protected because it involves a written statement "made in a place open to the public or a public forum in connection with an issue of public interest." Cal. Civ. Code § 425.16(e)(3). Public web sites are considered "public forums" under California's anti-SLAPP statute. *See Nygard, Inc. v. Uusi-Kerttula,* 159 Cal.App.4th 1027, 1038 (2008).

MacMartin's feedback was also made "in connection with an issue of public interest." Cal. Civ. Code § 425.16(e). Wigington essentially concedes that the issues implicated by this case are issues of public interest. The Complaint refers to his years-long debate with MacMartin—over email threads with an "anti-geoengineering activist" and others, as well as on a radio show debate. (Compl. ¶¶ 17-48.) The Carnegie Council for Ethics in International Affairs "launched" an initiative involving geoengineering, and in October 2020, the *New York Times* quoted MacMartin about geoengineering. (*Id.* ¶¶ 46-48.) Finally, Wigington pleads his documentary was viewed hundreds of thousands of times, and his preceding videos had millions of public views. (*Id.* ¶ 68.)

### 2.    Prong Two:  No Likelihood of Success on the Merits

Because MacMartin can show the challenged conduct is protected activity, the burden then shifts to Plaintiff to prove that he can prevail on the merits. *Resolute Forest Prods*., 302 F. Supp. 3d

**DEFENDANT DOUGLAS MACMARTIN's MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF HIS MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND MOTION TO STRIKE**

at 1025.  The Ninth Circuit has held that "an anti-SLAPP motion to strike challenges only the legal sufficiency of a claim, [so] a district court should apply the Federal Rule of Civil Procedure 12(b)(6) standard and consider whether a claim is properly stated." *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir. 2018); *see also Herring Networks*, 8 F.4th at 1155-56; *Resolute Forest Prods.*, 302 F. Supp. 3d at 1026 (where a plaintiff "cannot plead a plausible action under the FRCP 12(b)(6) standard, then [he] cannot as a matter of law meet the probability of success on the merits standard"; granting motion to strike on the same grounds as Rule 12(b)(6) motion to dismiss).

For the reasons set forth extensively in this memorandum of law, Plaintiff has not pled plausible claims for defamation or tortious/negligent interference under California law to survive a motion to dismiss under Rule 12(b)(6).  The Court should strike Wigington's claims and award MacMartin his fees and costs associated with defending this suit.  Cal. Civ. Proc. Code § 425.16(c).

## IV.   CONCLUSION

For the reasons set forth here, Defendant, Douglas MacMartin respectfully requests that the Court dismiss the Complaint in its entirety, with prejudice.

Respectfully submitted,

Dated:  January 24, 2022                   COZEN O'CONNOR

By:      */s/ Andrew M. Hutchison*
         Andrew M. Hutchison
         Michael de Leeuw  *(pro hac vice application forthcoming)*
         Tamar Wise *(pro hac vice application forthcoming)*
         101 Montgomery Street, Suite 1400
         San Francisco, CA 94104
         *Attorneys for Douglas MacMartin fka Douglas MacMynowski*

**DEFENDANT DOUGLAS MACMARTIN's MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF HIS MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND MOTION TO STRIKE**