UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Dane Wigington dba Geoengineering Watch, | No. 2:21-cv-02355-KJM-DMC |
| Plaintiff, | ORDER |
| v. | |
| Douglas MacMartin, | |
| Defendant. | |

Defendant Dr. Douglas MacMartin moves to dismiss for lack of personal jurisdiction and failure to state a claim, and also moves to strike based on California's Anti-SLAPP statute. Am. Mem. P. & A. Mot. Dismiss & Mot. Strike (Mot.) at 8, ECF No. 10.[1]  Plaintiff Dane Wigington opposes both motions, and the matter is fully briefed.  *See generally* Opp'n, ECF No. 16; Reply, ECF No. 20; Reply, ECF No. 19.  The court submitted this matter on the papers.  Minute Order, ECF No. 18.

For the reasons below, the court **grants defendant's motions to dismiss and strike**, and awards attorneys' fees to Dr. MacMartin.

---

[1] When citing page numbers on filings, the court uses the pagination automatically generated by the CM/ECF system.

1

I.  **FACTUAL ALLEGATIONS**

Since 2015, Dr. MacMartin has worked as a Senior Research Associate at Cornell University in Ithaca, New York, where he teaches and conducts research on climate change. Am. MacMartin Decl. ¶¶ 2, 5, ECF No. 10-1. Prior to moving to New York, Dr. MacMartin was a Research Professor at Caltech in Pasadena, California. *Id.* ¶¶ 6–7. While Dr. MacMartin still receives grant money through Caltech and works on a Caltech-based international project concerning the design of a large telescope, he has not taught a class at Caltech since early 2016. *Id.* ¶ 8. Since then, he has travelled to California a handful of times to visit family and once to attend a conference. *Id.* ¶ 9. All of Dr. MacMartin's meetings related to his work on the telescope happen virtually. *Id.* ¶ 8.

Mr. Wigington, a resident of California, owns GeoEngineering Watch, a sole proprietorship operating a website under the same name. Not. Removal, Ex. A, Compl. ¶ 15, ECF No. 1-1. Mr. Wigington avers he "investigates and publishes information regarding [solar radiation management] through [his website], social media, and in-person and on-air presentations." *Id.* In recent years, the scientific community has discussed the possibility of using solar radiation management to alter Earth's climate in response to climate change.[2] Mr. Wigington believes there "has been an intentional effort to dim direct sunlight through aircraft-dispersed particles," which he claims is evidenced by "pictures and film footage of jets leaving aerosols in the sky." *Id.*[3]

---

[2] As provided by Federal Rule of Evidence 201, the court takes judicial notice of an April 14, 2014 NASA.gov article on this topic, available at https://climate.nasa.gov/news/1066/just-5-questions-hacking-the-planet/ (last accessed August 31, 2022). *See also United States ex rel. Modglin v. DJO Glob. Inc.*, 48 F. Supp. 3d 1362, 1381 (C.D. Cal. 2014), *aff'd sub nom. United States v. DJO Glob., Inc.*, 678 F. App'x 594 (9th Cir. 2017) (a court "can take judicial notice of public records and government documents available from reliable sources on the Internet, such as websites run by governmental agencies.") (internal quotations and citations omitted).

[3] Also as provided by Rule 201, the court takes judicial notice of an FAA.gov factsheet on aircraft condensation trails (a.k.a. contrails), explaining why aircraft produce these trails. *See* https://www.faa.gov/regulations_policies/policy_guidance/envir_policy/media/contrails.pdf (last accessed August 31, 2022).

In mid-March 2021, Mr. Wigington published *The Dimming*, a documentary promoting his belief, on YouTube and Facebook. *Id.* ¶¶ 49, 54. After receiving over 150,000 views within two weeks, a third-party fact checker for Facebook known as Climate Feedback, not a party to this lawsuit, published a review debunking the documentary's central claims. *Id.* ¶¶ 55–57, 68. The review includes feedback from Dr. MacMartin stating, "All of these claims are pure fantasy. . . . We also know with 100% certainty that (a) the aircraft contrails they see aren't geoengineering, and (b) no-one is doing geoengineering," and explaining, with citations to peer-reviewed journal articles and similar sources, why the documentary's core claims are incorrect. *Id.* ¶ 56. Dr. MacMartin and Mr. Wigington have a history of private and public debate on this topic dating back to 2017. *Id.* ¶¶ 17–48. Mr. Wigington avers Dr. MacMartin affirmatively contacted Climate Feedback to post a review and "retaliate against" him. *Id.* ¶ 60. As a result of the review, the documentary has been tagged as "False Information" on Facebook, which Mr. Wigington says has harmed his reputation, resulted in decreased viewership, and lowered donations to his website. *Id.* ¶¶ 62, 68–69.

In November 2021, Mr. Wigington filed a complaint in Shasta County Superior Court, alleging Dr. MacMartin defamed him and interfered with prospective economic relations. *Id.* ¶¶ 72–94. Dr. MacMartin removed the case to federal court in December 2021, based on 28 U.S.C. §§ 1332(a) and 1441. Not. Removal, ECF No. 1. Dr. MacMartin now moves to dismiss, arguing this court lacks personal jurisdiction and Mr. Wigington has failed to state a claim; he also moves to strike this lawsuit under California's anti-SLAPP law. *See generally* Mot.

## II. DISCUSSION

### A. Personal Jurisdiction

No federal statute governs the personal jurisdiction questions in this case, so this court must determine whether California courts could exercise jurisdiction over the claims against Dr. MacMartin. *See Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1106 (9th Cir. 2020). California authorizes its courts to exercise jurisdiction "to the full extent permissible under the U.S. Constitution." *Picot v. Weston*, 780 F.3d 1206, 1211

(9th Cir. 2015) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014)); *see also* Cal. Civ. Proc. Code § 410.10.  As a result, this court's personal jurisdiction turns on the limits of the Fourteenth Amendment's Due Process Clause.  *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923 (2011).  Mr. Wigington has the burden to show the court can exercise jurisdiction without depriving Dr. MacMartin of due process.  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).  The court assumes the complaint's uncontroverted allegations are true and resolves any factual disputes in Mr. Wigington's favor.  *Glob. Commodities*, 972 F.3d at 1106.  The court may consider evidence presented in affidavits in determining personal jurisdiction.  *See Scott v. Breeland*, 792 F.2d 925, 927–28 (9th Cir. 1986)).

The "canonical opinion" on due process and personal jurisdiction is the Supreme Court's decision in *International Shoe Co. v. Washington*.  *Goodyear*, 564 U.S. at 923 (citing 326 U.S. 310 (1945)).  In that case, the Court held "a State may authorize its courts to exercise personal jurisdiction over an out-of-state defendant if the defendant has 'certain minimum contacts with the State such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'"  *Id.* (quoting *Int'l Shoe*, 326 U.S. at 316) (alterations omitted). "In giving content to that formulation, the Court has long focused on the nature and extent of 'the defendant's relationship to the forum State.'" *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021) (quoting *Bristol-Myers Squibb Co. v. Superior Court of Cal., San Francisco Cty.*, 137 S. Ct. 1773, 1779 (2017)).

Over the years, the Supreme Court has recognized "two kinds of personal jurisdiction: general (sometimes called all-purpose) jurisdiction and specific (sometimes called case-linked) jurisdiction." *Id.*  Mr. Wigington appears to rely exclusively on specific jurisdiction. *See, e.g.*, Compl. ¶ 2; *see generally* Opp'n.  Courts in the Ninth Circuit use a three-part test to decide "whether a party's minimum contacts meet the due process standard for exercise of specific personal jurisdiction." *LNS Enters. LLC v. Cont'l Motors, Inc.*, 22 F.4th 852, 859 (9th Cir. 2022) (quoting *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 741 (9th Cir. 2013)).  First, the plaintiff must show the out-of-state defendant purposefully directed activities to the forum state, "consummate[d] some transaction with the forum" or its residents, or otherwise

4

"purposefully avail[ed]" itself "of the privilege of conducting activities within the forum," thus "invoking the benefits and protections of its laws." *Glob. Commodities*, 972 F.3d at 1107 (quoting *Schwarzenegger*, 374 F.3d at 802). Second, the plaintiff must show its claims "arise out of or relate to the defendant's forum-related activities." *Id.* Third, if the plaintiff satisfies these first two parts of the test, the defendant may show that exercising personal jurisdiction would be unreasonable. *Id.* Here, the court need not reach the second and third parts of the test because Mr. Wigington has not shown he can satisfy the first part.

A plaintiff can satisfy the first part of the three-part test by showing the defendant purposefully directed some harmful action toward the forum state. *Id*. The foundation of this theory of personal jurisdiction is *Calder v. Jones*, a case in which the Supreme Court held "a foreign act that is both aimed at and has effect in the forum satisfies the first prong of the specific jurisdiction analysis." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1156 (9th Cir. 2006) (citing 465 U.S. 783 (1984)). When a plaintiff relies on *Calder*, the court considers whether the defendant "committed an intentional act" that was "expressly aimed at the forum state," and as a result, the plaintiff suffered a harm "the defendant knows is likely to be suffered in the forum state." *Schwarzenegger*, 374 F.3d at 803 (quoting *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002)).

Mr. Wigington's allegations against Dr. MacMartin do not meet this standard. According to the complaint, Dr. MacMartin contacted Climate Feedback, a public website, to comment on the documentary Mr. Wigington posted on Facebook. While Dr. MacMartin knew that Mr. Wigington lived in California, courts in this state are clear that "merely posting on [Facebook] negative comments about the plaintiff and knowing the plaintiff is in the forum state are insufficient to create minimum contacts." *Burdick v. Superior Ct.*, 233 Cal. App. 4th 8, 25 (2015) (finding no specific personal jurisdiction). Instead, the nonresident defendant must "expressly aim[] or intentionally target[] his [] intentional conduct at the forum state." *Id.* Mr. Wigington does not allege the documentary itself or Dr. MacMartin's comments were "directed at the State of California or a California audience," *id.* at 27, nor does he distinguish his case from *Burdick*. *Cf. Dongxiao Yue v. Wenbin Yang*, 62 Cal. App. 5th 539, 548–49 (2021)

5

(finding comments made on internet were directed at California where nonresident defendant "mentioned plaintiff by name and threatened to harm him in California" and "repeatedly referred to California, suggested California criminal liability, and threatened a California visit"). Mr. Wigington's citation to *Calder v. Jones* is unavailing here for the same reasons the court in *Burdick* found it distinguishable. *See Burdick*, 233 Cal. App. 4th at 25–26. Likewise, his reliance on *Benaron v. Simic*, 434 F. Supp. 3d 907 (D. Or. 2020) is misplaced, as that case does not involve internet defamation and is distinguishable on the facts.

While Mr. Wigington does not argue that this court has general personal jurisdiction over Dr. MacMartin, Mr. Wigington's allegations would not support such a finding. "The standard for establishing general jurisdiction is exacting and requires that the defendant's contacts be so substantial and of such a nature as to justify suit against the defendant on causes of action arising from dealings entirely distinct from those activities." *Elite Semiconductor, Inc. v. Anchor Semiconductor, Inc.*, No. 20-06846, 2021 WL 3037701, at *7 (N.D. Cal. July 19, 2021) (internal quotations and citations omitted). "The 'paradigm' for general jurisdiction over an individual is 'the individual's domicile.'" *Id.* (quoting *Goodyear*, 131 S. Ct. at 2853). Dr. MacMartin is domiciled in New York, has limited contacts with California, and has never owned property in California. *See generally* Am. MacMartin Decl. Dr. MacMartin's occasional visits to California and the work he conducts remotely on behalf of Caltech are also unable to support a finding of general personal jurisdiction. *Span Const. & Eng'g, Inc. v. Stephens*, No. 06-0286, 2006 WL 1883391, at *6 (E.D. Cal. July 7, 2006) (no general jurisdiction even "when an individual conducts business that requires their occasional presence in a state").

Accordingly, this court does not have personal jurisdiction over Dr. MacMartin.

**B.     Anti-SLAPP Motion to Strike**

"Anti-SLAPP statutes are designed to allow the early dismissal of meritless lawsuits aimed at chilling expression through costly, time-consuming litigation." *Gardner v. Martino*, 563 F.3d 981, 986 (9th Cir. 2009) (citations omitted). "[A] prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs." Cal. Civ. Proc. Code § 415.16(c)(1).

The Ninth Circuit has not addressed whether a trial court may award anti-SLAPP fees after finding the court lacks personal jurisdiction over a defendant. However, the Supreme Court of California has held "[a] court that lacks subject matter jurisdiction over a plaintiff's claims has the power to resolve an anti-SLAPP motion on jurisdictional grounds." *See Barry v. State Bar of California*, 2 Cal. 5th 318, 329 (2017). In *Barry*, the court reasoned that because the purpose of the anti-SLAPP's fee-shifting provision is to "compensate[] the prevailing defendant for the undue burden of defending against litigation designed to chill the exercise of free speech and petition rights," whether a defendant successfully moves to strike on merits or nonmerits grounds is irrelevant. *Id.* at 326–27. This reasoning was "consistent with the conclusions of federal courts that have held that a court that lacks jurisdiction to determine the merits of an action may nevertheless consider 'collateral issues' such as whether the prevailing party should be awarded its litigation expenses or whether sanctions should be imposed for a litigant's abuse of the judicial process." *Id.* at 326 (citations omitted). Similar, "intuitive" reasoning girded a district court's conclusion that it retained the authority to award anti-SLAPP fees even though plaintiff voluntarily dismissed the defendants. *Gottesman v. Santana*, 263 F. Supp. 3d 1034, 1040 (S.D. Cal. 2017). Specifically, the court was wary of allowing plaintiffs to file a SLAPP suit without the risk of incurring fees because a "defendant would be cheated of redress." *Id.* (quoting *Coltrain v. Shewalter*, 66 Cal.App.4th 94, 106–07 (1998), *as modified* (Sept. 4, 1998)). In sum, both state and federal courts recognize the importance of protecting a trial court's "incidental power to require the plaintiff to compensate the defendant for the undue burden of defending against the nonmeritorious claim," even where a court lacks jurisdiction over a defendant. *Barry*, 2 Cal. 5th at 327.

In *Williams v. Kula*, No. 20- 1120, 2020 WL 7770915, at *7 (S.D. Cal. Dec. 29, 2020), another district court addressed plaintiffs' argument that the court should dismiss the action without reaching defendants' anti-SLAPP motions after concluding it lacked personal jurisdiction over defendants—the exact issue presently before this court. In declining to reach the anti-SLAPP motions, the court first acknowledged that following *Barry*, "a court *may* award" fees where the court lacks jurisdiction, but an award of fees is not "*mandatory*." *Id.* (citing *Barry*,

7

2 Cal. 5th at 320–21) (emphases in original).[4]  The court then reasoned that "declining to rule on the anti-SLAPP motion makes particular sense where, as here, the action is dismissed for lack of personal jurisdiction because [d]efendants 'cannot have it both ways,' claiming both that the [c]ourt lacks jurisdiction over them but also seeking an affirmative exercise of the [c]ourt's jurisdiction to obtain a fee award." *Id.* at *8 (citations omitted).  The court disagreed with defendant's argument that he was "required to assert every single defense" in his initial motion, suggesting he could have waited to raise an anti-SLAPP challenge. *Id.*  This court does not find the reasoning in *Williams* persuasive, in light of *Barry*—after all, a defendant who moves to dismiss a SLAPP lawsuit for lack of personal jurisdiction is still faced with the "undue burden of defending against the nonmeritorious claim," including associated fees and costs. *Barry*, 2 Cal. 5th at 327.

The *Williams* court further disapproved of defendants' "duplicative" and "voluminous" anti-SLAPP motions, which did "not achieve any practical benefit . . . aside from burdening the [c]ourt . . . and menacing [p]laintiffs with the specter of attorneys' fees." *Williams*, 2020 WL 7770915, at 8 (quotations and citations to record omitted).  Dr. MacMartin's anti-SLAPP motion stands in sharp contrast to the motions filed in *Williams*.  For one, Dr. MacMartin relies almost exclusively on the merits of Mr. Wigington's claims in arguing for anti-SLAPP fees, Mot. at 24–25, and he has only filed one motion to strike.  Moreover, Dr. MacMartin's likelihood of prevailing on his anti-SLAPP motion on the merits, which the court analyzes below, weighs in favor of the court's exercising its discretion to award fees.  Indeed, the anti-SLAPP motion's fee shifting provision exists to deter the exact species of claim Mr. Wigington brings here.

A court considering a motion to strike under California's anti-SLAPP statute must engage in a two-part inquiry in analyzing the allegations. "First, a defendant 'must make an initial prima

---

[4] The court also noted "federal courts have denied—and continue to deny after *Barry*—as moot anti-SLAPP motions when the court has dismissed the underlying action on jurisdictional grounds." *Williams*, 2020 WL 7770915, at *7.  However, in the string cite of cases supporting this observation, only two were decided after *Barry*, and neither of those cases referenced or acknowledged *Barry*. *See Williby v. Hearst Corp.*, No. 15-02538, 2017 WL 1210036, at *7 (N.D. Cal. Mar. 31, 2017); *Newport Inv. Grp., LLC v. Cliett*, No. 1801597, 2019 WL 2424109, at *1 (C.D. Cal. June 10, 2019).

facie showing that the plaintiff's suit arises from an act in furtherance of the defendant's rights of petition or free speech.'" *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1110 (9th Cir. 2003) (quoting *Globetrotter Software, Inc. v. Elan Comput. Grp., Inc.*, 63 F. Supp. 2d 1127, 1129 (N.D. Cal. 1999)). "The defendant need not show that the plaintiff's suit was brought with the intention to chill the defendant's speech; the plaintiff's 'intentions are ultimately beside the point.'" *Id.* (quoting *Equilon Enters., LLC v. Consumer Cause, Inc.*, 29 Cal. 4th 53, 67 (2002)). Nor does the defendant bringing the motion need to show that its speech was actually chilled. *Id.* (citing *City of Cotati v. Cashman*, 29 Cal. 4th 69, 75–76 (2002)).

"Second, once the defendant has made a prima facie showing, 'the burden shifts to the plaintiff to demonstrate a probability of prevailing on the challenged claims [as protected by the federal or state constitutions].'" *Id.* at 1109. If "the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim," the court must deny the motion. Cal. Civ. Proc. Code § 425.16(b)(1).

### 1.    Prima facie showing

Dr. MacMartin engaged in protected conduct because he made a written statement "in a place open to the public or a public forum in connection with an issue of public interest." Cal. Civ. Code § 425.16(e)(3). Courts have recognized that Facebook pages like Mr. Wigington's, which are accessible to anyone who consents to Facebook's terms, are public forums. *See Cross v. Facebook, Inc.*, 14 Cal. App. 5th 190, 199 (2017). Mr. Wigington's documentary on aircraft condensation trails was also an issue of "public interest," a term "construed broadly" as "any issue in which the public is interested." *Rivera v. First DataBank, Inc.*, 187 Cal. App. 4th 709, 715–16 (2010) (internal quotations and citations omitted). By Mr. Wigington's own admission, well over 100,000 people viewed his documentary on Facebook over the course of just two weeks. *Terry v. Davis Cmty. Church*, 131 Cal. App. 4th 1534, 1547 (2005) ("a matter of public interest should be something of concern to a substantial number of people"). As noted above, Dr. MacMartin and Mr. Wigington have also sparred on the documentary's subject matter in various public forums in recent years. Because Dr. MacMartin made a prima facie showing that the claims he challenges arise from protected activity, the burden shifts to Mr. Wigington to

9

"demonstrate that each challenged claim . . . is legally sufficient . . . ." *Baral v. Schnitt*, 1 Cal. 5th 376, 396 (2016).

### 2. Probability of prevailing on the claims

Even if this court had personal jurisdiction over Dr. MacMartin, Mr. Wigington has not met his burden of showing a probability of success on either of his claims. *See Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir. 2018) ("[W]hen an anti-SLAPP motion to strike challenges only the legal sufficiency of a claim, a district court should apply the Federal Rule of Civil Procedure 12(b)(6) standard and consider whether a claim is properly stated.").

Under California law, defamation is "the intentional publication of a statement of fact which is false, unprivileged, and has a natural tendency to injure or which causes special damage." *Herring Networks, Inc. v. Maddow*, 8 F.4th 1148, 1157 (9th Cir. 2021) (quoting *Gilbert v. Sykes*, 147 Cal. App. 4th 13, 27 (2007)). "Because the challenged speech must be a statement of fact, the threshold question in every defamation suit is 'whether a reasonable factfinder could conclude that the [contested] statement implies an assertion of objective fact.'" *Id*. (quoting *Unelko Corp. v. Rooney*, 912 F.2d 1049, 1053 (9th Cir. 1990)) (alterations in *Herring*). "If the plaintiff is a public figure, then he must prove that the defendant acted with 'actual malice.'" *Penrose Hill, Ltd. v. Mabray*, No. 20-01169, 2020 WL 4804965 (N.D. Cal. Aug. 18, 2020) (quoting *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 258 (9th Cir. 2013)).

Here, Mr. Wigington objects to the following statements as defamatory: "All of these claims are pure fantasy . . . We also know with 100% certainty that (a) the aircraft contrails they see aren't geoengineering, and (b) no-one is doing geoengineering." Compl. ¶¶ 73–79. Even assuming without deciding that these are defamatory statements of fact, the court finds Mr. Wigington is a "limited purpose" public figure because he has "voluntarily inject[ed] himself . . . into a particular public controversy" by ardently promoting his theory about solar radiation management and aircraft condensation trails. *Reader's Dig. Assn. v. Superior Ct.*, 37 Cal. 3d 244, 253 (1984) (internal quotations and citations omitted); *see also Planet Aid, Inc. v. Reveal*, 44 F.4th 918 (9th Cir. 2022) (observing that the "voluntariness requirement has been interpreted

1   broadly" and can "be satisfied by a showing that a person or entity engaged in a course of conduct
2   that foreseeably put themselves at risk of public scrutiny with respect to a limited range of
3   issues").[5] Accordingly, he must allege Dr. MacMartin's "defamatory falsehood was made with
4   knowledge of its falsity or with reckless disregard for the truth." *Gertz v. Robert Welch, Inc.*,
5   418 U.S. 323, 342 (1974). "To demonstrate reckless disregard of the truth, [Mr. Wigington] must
6   [ultimately] show by clear and convincing evidence that [Dr. MacMartin] 'entertained serious
7   doubts as to the truth' of [his] statements." *Makaeff*, 715 F.3d at 270.

8         Mr. Wigington cannot meet this stringent standard. Even if Dr. MacMartin did not
9   "conduct a thorough and objective investigation" by watching the documentary prior to
10  commenting on it, or if Mr. Wigington presented evidence that Dr. MacMartin harbored "ill will"
11  towards him, such evidence does not, "standing alone," "prove actual malice, nor even
12  necessarily raise a triable issue of fact on that controversy." *Reader's Dig. Assn*, 37 Cal. 3d at
13  258. Indeed, as Mr. Wigington concedes, he and Dr. MacMartin have been engaged in a public
14  and heated debate on this topic since 2017, Compl. ¶¶ 17–48, indicating Dr. MacMartin's "actual
15  belief" is that his criticisms of Mr. Wigington's theories are truthful, *Reader's Dig. Assn.*,
16  37 Cal. 3d at 257. Likewise, Mr. Wigington acknowledges Dr. MacMartin began publishing his
17  theories about solar radiation management before the two met, suggesting Dr. MacMartin is not
18  engaging in public debates on this issue because of personal animosity he harbors for Mr.
19  Wigington. Compl. ¶ 16. In sum, Mr. Wigington has not shown he will probably prevail on his
20  defamation claim.

21        "To state a claim for intentional interference under California law, a plaintiff must
22  allege, *inter alia,* that 'the defendant engaged in an independently wrongful act,' understood as an
23  act 'proscribed by some constitutional, statutory, regulatory, common law, or other determinable
24  legal standard.'" *Block v. eBay, Inc.*, 747 F.3d 1135, 1141 (9th Cir. 2014) (quoting *Korea Supply*
25  *Co. v. Lockheed Martin Corp.,* 29 Cal. 4th 1134 (2003)). Mr. Wigington points to defamation as
26  the independent wrongful act. Opp'n at 19. Accordingly, he is unlikely to prevail on his claims

---

[5] The court also notes that Mr. Wigington does not challenge Dr. MacMartin's assertion that he is a limited public figure. *See generally* Opp'n.

for intentional and negligent interference with prospective economic relations for the same reasons he is unlikely to prevail on his defamation claim.

Because Dr. MacMartin has shown that Mr. Wigington's claims derive from protected activity, and Mr. Wigington has not shown he will probably prevail on the merits, the court grants Dr. MacMartin's motion to strike.

### 3. Leave to Amend and Fees

Granting a defendant's anti-SLAPP motion to dismiss "without granting . . . leave to amend would directly collide with Fed. R. Civ. P. 15(a)'s policy favoring liberal amendment." *Verizon Delaware, Inc. v. Covad Communications Co.*, 377 F.3d 1081, 1091 (9th Cir. 2004). However, a court may deny leave to amend if amendment would be futile. *Sylvia Landfield Trust v. City of Los Angeles*, 729 F.3d 1189, 1196 (9th Cir. 2013). Here, given the court's lack of personal jurisdiction over Dr. MacMartin, amendment would be futile. The court also awards fees and costs to Dr. MacMartin, subject to review of an application justifying those fees and costs. *Peak Health Ctr. v. Dorfman*, No. 19-04145, 2020 WL 887935, at *9 (N.D. Cal. Feb. 24, 2020) ("If a court finally dismisses a claim without leave to amend, the court ordinarily must proceed to consider an anti-SLAPP defendant's claim for attorneys' fees.")

### III. CONCLUSION

For the foregoing reasons, the court **grants the motion to dismiss** all claims against Dr. MacMartin without leave to amend. The court also **grants the anti-SLAPP motion to strike and award fees and costs**.

Within 21 days of the issuance of this order, Dr. MacMartin may file a motion not to exceed 10 pages in support of his request for an award of attorneys' fees and costs. Such motion must be supported by a declaration or other evidence establishing the amount of fees and costs requested. Mr. Wigington may file a response to Dr. MacMartin's motion, not to exceed 10 pages, no later than 14 days following Dr. MacMartin's motion. No reply brief is permitted. Alternatively, if the parties stipulate to the amount of attorneys' fees and costs, they may so advise the court and moot the need for further briefing.

/////

1     This order resolves ECF No. 7.

2     IT IS SO ORDERED.

3 DATED: August 31, 2022.

4

                                        CHIEF UNITED STATES DISTRICT JUDGE